UNITED STATES

v.

Sergeant Maurice C. BRIGGS, FR223–11–7920 United States Air Force.

ACM 31858.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 30 June 1995.

Decided 10 Oct. 1996.

Appellate Counsel for Appellant: Colonel Jay L. Cohen and Major Kevin P. Koehler.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Major LeEllen Coacher.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, C.H., II, Judge:

Contrary to his pleas, a general court-martial consisting of officer members convict-

ed appellant of rape and indecent assault. They sentenced him to a dishonorable discharge, confinement for 30 months, total forfeitures, and reduction to airman basic. In his appeal appellant alleges that the evidence on both charges is factually insufficient to support his conviction, that the military judge abused his discretion in denying his motion to compel discovery of the victim's medical records, and that the indecent assault charge should have been dismissed because it was multiplicious with the rape charge. Finding no merit to any of these arguments, we affirm.

### Facts

AK, the 19–year–old dependent daughter of an active duty father, testified that after spending the day together looking after three young boys at a park, appellant and she returned to his dormitory room on Kadena Air Base, Okinawa, to tape some of appellant's compact discs. On the way, appellant purchased a bottle of wine and a six-pack of beer for the two of them to consume. As she had on several occasions in the past, AK decided to spend the night in appellant's room, and in his bed.[1] She retired fully clothed to one side of the bed. Appellant was still up.

In the early morning hours, however, AK stirred briefly into semi-cognizance when appellant rolled her over onto her back, but then drifted back to sleep. She awakened fully sometime later to find that her panties and shorts had been stripped from her, her legs had been hoisted in the air and were supported by appellant's forearms, and appellant was actively engaged in sexual intercourse with her. Repeated entreaties to stop and to push appellant away proved unavailing. AK was unable to get appellant to desist until he had climaxed.

When she finally pushed him off, she ran into the bathroom, sobbing. After a while, she returned, pulled on some clothing, and left, reporting the incident in short order to the Air Force Office of Special Investigations (AFOSI). Later that morning, AFOSI Spe-

---

1. She testified, and appellant conceded to investigators, that the arrangement had never involved sexual intercourse, nor even foreplay. Appellant did claim, however, that while asleep, AK would "cuddle" with him.

cial Agent (SA) Jurancich advised appellant of his rights and that he was suspected of rape. Appellant agreed to waive his rights and consented to an interview. The substance of that interview corroborated in every material respect what AK had claimed. Appellant, who was married but whose wife was in the United States, admitted that there had never been sexual intimacy of any sort between him and AK before that evening. He further admitted that they were "just friends" and that very evening they had a discussion of their friendship in which AK had expressed satisfaction with their present, platonic relationship, and had made it plain she didn't want to go beyond that. SA Jurancich testified that appellant told him that, while AK was apparently asleep, he had begun stroking her head and massaging her back. She had not fully awakened. Later, he rolled her over onto her back. Although her "eyelids fluttered" AK did not speak, and did not fully open her eyes. At this point appellant removed her shorts and panties, and began fondling her inner thighs and genitalia. This was the subject of the indecent assault charge.

When AK still did not evince signs of distress, nor even consciousness, appellant paused in his fondling and pondered whether he "would gain a girlfriend but lose a friend." He wondered how much farther he would go. He also told Jurancich that he looked around briefly for a condom, but, finding none, decided to press on without one. He admitted that at no time while all of this was going on did AK open her eyes, call his name, embrace or kiss him, or in any other way consciously cooperate with what he was doing. Indeed, he pulled up AK's legs, penetrated her, and had been engaging in actual copulation for two minutes before her eyes flew open, she "stiffened" said, "no," and tried to push him off. He admitted that he did not immediately desist from continued intercourse because he was too close to orgasm. Although he began a written statement, after

a while he thought better of it, and never completed one.

Appellant did not take the stand during the findings portion of his trial, so the account of events heard by the court members came from AK herself, and SA Jurancich's version of what appellant had told him.

*Factual Sufficiency*

■ We decide factual sufficiency based upon whether we, ourselves, are convinced of appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987). We are. Every material fact necessary to resolution of appellant's guilt of rape and indecent assault was provided, independent of AK's testimony, by appellant himself. He admitted that he could not be sure that AK was awake until she "stiffened" and tried to push him off, and that she had not responded in any meaningful way to any of his caresses, nor even to his undressing of her, and that she might very well have been asleep not only while he undressed and fondled her private parts, but even when he penetrated her. Despite limited manifestations of physical affection which had occurred hours, and even weeks earlier, there was never any act or statement from AK which would have led appellant reasonably to believe that she consented to sexual intercourse. Certainly, any doubt in his mind must have vanished when she awakened, "withdrew" any purported consent, and struggled to push him off. But even this did not deflect him from his purpose.

■ The law does not construe passive acquiescence of an insensate, or sleeping woman, as consent. When a victim is incapable of consenting because she is asleep, no greater force is required than that necessary to achieve penetration. *United States v. Short*, 16 C.M.R. 11, 15, 1954 WL 2421 (C.M.A.1954). We are persuaded by all of the evidence that AK did not consent to intercourse with appellant, and hence that he raped her.[2]

2. Appellant's trial strategy was that, even though in retrospect he admitted she might well have been asleep, at the time he honestly and reasonably believed she had sufficiently manifested her consent. The military judge was skeptical that

sufficient evidence had been presented to this effect to even warrant an instruction to the court-members, but was persuaded by counsel for both sides to do so. Certainly, without the appellant

We have no difficulty concluding that appellant is guilty of an indecent assault, either. Once again, it is clear that appellant knew quite well that AK was asleep, or so close thereto that she was not conscious of what was happening to her. We deem it significant that there is an utter absence of evidence of mutuality. Appellant took off AK's panties and shorts without her help or cooperation, but left on her bra and t-shirt. He undressed himself from the waist down, and he stroked, touched, and fondled her in her most intimate regions without eliciting so much as a word from her. His claim that she opened her legs a little while he was thus engaged is hardly conclusive of voluntary cooperation, but is consistent with AK's apparent dream-like state while all of this was going on.

### Military Judge's Refusal to Compel Disclosure of AK's Medical Records

■ At trial, the military judge denied appellant's motion for an order compelling the prosecution to surrender all of AK's medical records,[3] ruling that the defense had not carried its burden of establishing that the records contained evidence relevant and necessary to the defense. R.C.M. 701(a)(2), 703(f)(1), 703(f)(3). We review this decision using an "abuse of discretion" standard. *United States v. Branoff*, 38 M.J. 98, 104 (C.M.A.1993).

Trial defense counsel offered little for the military judge to go on in the way of relevance. His theory was that AK's medical records "contain information pertaining to her medical background and possibly a prior rape." Counsel told the military judge that when he interviewed AK, she had apparently disclosed she had been raped before. She had declined to discuss it further. Defense counsel's theory was that her medical records might contain records pertaining to a prior rape. They might also, counsel contin-

ued, disclose that it was a *false* allegation, thereby providing impeachment material.

■ We agree with the military judge that counsel's theory was too speculative, and too insubstantial, to meet even a threshold requirement of relevance and necessity. A general description of the material sought or a conclusory argument as to their materiality is insufficient. *United States v. Branoff*, 34 M.J. 612, 620 (A.F.C.M.R.1992), *reversed on other grounds*, 38 M.J. 98 (C.M.A.1993), *citing United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir.1984).

Recalling that appellant's trial defense strategy seemed to be that he was honestly and reasonably mistaken as to whether she was asleep at the time of original penetration, we can conceive of nothing that might have been in AK's medical records that would have been *logically* relevant. The records either would show that she had reported an earlier rape to military medical authority, or they wouldn't. The absence of an entry would no more establish that she *wasn't* raped than would the presence of such an entry prove she was. Whether or not she was raped earlier, much less whether she had reported the rape to a doctor, was of no consequence to any fact at issue in this case, because AK's credibility was not really at issue. *Cf. United States v. Eshalomi*, 23 M.J. 12, 27 n. 11 (C.M.A.1986) (per Everett, C.J., with Cox, J., concurring in the result). Appellant had conceded that the intercourse took place, that AK was likely asleep at the time of original penetration, and that when she had awakened and tangibly manifested her non-consent he had continued intercourse until he ejaculated. Under these circumstances, we do not understand how the impeachment of her credibility, even assuming for the sake of argument that a previous rape could be so employed, was necessary to appellant's defense.

*United States v. Reece*, 25 M.J. 93 (C.M.A. 1987), offered by appellant in support of his

---

actually taking the stand, putting on a "mistake" offense is a steep climb.

**3.** Defense counsel had, in addition, requested AK's mental health records. None existed. Trial counsel allowed defense counsel access to that portion of AK's medical records pertaining to the

examination of AK following her complaint that appellant had raped her. However, defense counsel wanted the rest of her medical file as well, which the prosecutor refused. It is that portion at issue here.

argument, is inapposite. In *Reece* the Court of Appeals for the Armed Forces, then the Court of Military Appeals, held that it was an abuse of discretion for the military judge not to order disclosure of the juvenile and mental health records of the appellant's accusers. Two crucial distinctions render the case before us different than *Reece* and compel a different result.

Most important is that in *Reece* there was a stronger showing of relevance and necessity. There was evidence that one accuser had a history of inpatient treatment for alcohol, drug, and behavioral problems, and that the other had been placed in a foster home and was under the control of state welfare authorities for uncontrollable behavior. Those records were withheld on the stated basis of privilege,[4] even though the military judge ruled as he did based upon the prosecutor's assessment of their relevance. The credibility of the two girls in *Reece* was pivotal to Reece's defense, since their testimony constituted the sole evidence against him. By contrast, in this case, efforts to impugn AK's credibility would have been largely meaningless in view of appellant's essential agreement with all material aspects of her testimony.

Second, in *Reece* nothing of the sexual history of either accuser was sought, and thus the policy considerations of MIL. R. EVID. 412 were not implicated. Reinforcing our conclusion as to the logical irrelevance of AK's medical records are the special rules of *legal* relevance concerning a rape victim's sexual past contained in MIL. R. EVID. 412. None of the three exceptions to the general prohibition against using a victim's sexual history pertains to the information sought by defense counsel. Nothing in MIL. R. EVID. 412 authorizes counsel to rummage through a rape victim's medical history based upon nothing more than supposition or wishful thinking. On the contrary, to permit such would be antithetical to the Rule's purpose "to shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to prosecution of such offenses." MANU-AL FOR COURTS-MARTIAL, UNITED STATES, App. 22, A22–35 (1995 ed.).

■ Appellant argues that this result should change, however, because the prosecutor examined AK's records to determine if there were any reference to a previous rape allegation. He cites in support of his argument Article 46, UCMJ, 10 U.S.C. § 846, and suggests the military judge should not have relied upon the representations of the trial counsel that there was nothing pertaining to an earlier rape in the records, but should have assured himself of that fact by a review of the records *in camera*.

We begin with the general observation that the actions of the prosecutor do nothing to improve, or diminish, the relevance of any requested material. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (due process violated with suppression of favorable evidence, irrespective of motives of prosecutor). The prescriptions of Article 46 do not enable appellant to bypass the necessity, in discovery, to demonstrate that requested material is relevant and necessary to his defense. It does no more than provide equal access by the government and by an accused to "witnesses and other evidence, in accordance with such regulations as the President may prescribe." Key among those regulations prescribed by the President are the Military Rules of Evidence, which bring us full-circle back to questions of relevance, materiality, and necessity.

The question of an *in camera* inspection is a red herring. Not only did trial defense counsel not request an *in camera* inspection, the basis of the military judge's ruling with respect to relevance rendered such an inspection unnecessary, as he did not and need not have relied upon the representations of counsel. We note parenthetically that had he done so, R.C.M. 701(g)(2) would have required that he append AK's entire medical record as an appellate exhibit to the record of trial, an absurdity attending counsel's vague theory of relevance and the coordinate requirement to prove the *absence* of an entry. That alone highlights the unreasonable-

---

4. In footnote 4 of *Reece,* the Court declared "We are not sympathetic to the claim of privilege where a juvenile accuses an individual of a crime."

ness of appellant's discovery request, and forms a sound basis for its denial. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

■ That said, it would have been better had the prosecution behaved consistently with their principal argument, *viz.,* that a previous instance of rape, not involving appellant, was neither relevant nor necessary to appellant's defense. If so, there was no reason to go through AK's private medical history to determine if one existed. Conversely, if defense counsel should make a threshold showing that there is reason to believe there is material in medical records which *is* relevant and necessary to an accused's defense, the approved procedure is for the military judge to review any undisclosed material, *in camera.* R.C.M. 701(g)(2); *United States v. Charles,* 40 M.J. 414, 415 (C.M.A.1994). Because defense counsel failed to advance even a plausible theory of relevance, the fact that the prosecutor looked through the records and assured the court that there was no record of a previous rape claim, or that the military judge didn't look at the records himself, is of no consequence to our resolution of this case.

■ Our discussion of relevance helps us to decide that, even if there were error here, we can divine no theory of materiality which undermines our confidence in the outcome of the trial. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Assuming even that the generous discovery rights of Article 46 and R.C.M. 701 impose an as yet unarticulated, but heavier, burden on the government to justify nondisclosure, we are confident that it is met here. *Eshalomi,* 23 M.J. at 24. Accordingly, this assignment of error is rejected.

### Multiplicity of Indecent Assault and Rape Charge

■ In his appellate brief, counsel does not argue strenuously that the indecent assault charge and the rape charge are multiplicious according to prevailing legal standards. They surely are not. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Teters,* 37 M.J. 370 (C.M.A.1993), *cert. denied,* 510 U.S.

1091, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). Not only are the elements of the two offenses quite clearly discrete, but according to appellant's version of the assault, as related by SA Jurancich, there was an appreciable period of time between the assault and the rape during which appellant deliberated as to whether he ought to go farther, and looked for a condom. *Cf. United States v. Weymouth,* 40 M.J. 798 (A.F.C.M.R.1994), *aff'd,* 43 M.J. 329 (1995) (multiplicious offense not necessarily lesser-included offense).

■ What appellate counsel does instead, is raise the "tain't fair" banner, inviting our attention to the admonition to prosecutors in footnote 4 of *United States v. Foster,* 40 M.J. 140 (C.M.A.1994) not to pile on charges. We are sensitive to that caution, and have not hesitated to pull the flag where prosecutorial enthusiasm has crossed the boundary. *See, e.g., United States v. Roberson,* 43 M.J. 732 (A.F.Ct.Crim.App.1995); *United States v. Clinkenbeard,* 44 M.J. 577 (A.F.Ct.Crim.App. 1996). We see no cause to call a penalty here. Charging both offenses was neither unreasonable, nor was it prohibited by any of the various standards against which to measure multiplicity.

### Conclusion

Having concluded that appellant's three assignments of error are without merit, we are satisfied that the findings and sentence are correct in law and in fact, the sentence is appropriate, and the same are hereby

AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.