UNITED STATES

v.

**Master Sergeant Charles S. STEWART,
United States Air Force.**

ACM 35471.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 5 July 2002.

31 Jan. 2006.

Appellate Counsel for Appellant: William E. Cassara (argued), Colonel Beverly B. Knott, Lieutenant Colonel Nikki A. Hall, Major Terry L. McElyea, Major Andrew S. Williams, and Captain John S. Fredland.

Appellate Counsel for the United States: Captain Jefferson E. McBride (argued), Colonel LeEllen Coacher, Lieutenant Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, and Major John C. Johnson.

Before STONE, SMITH, and MATHEWS, Appellate Military Judges.

## OPINION OF THE COURT

MATHEWS, Judge:

The appellant was convicted by a general court-martial, contrary to his pleas, of rape and adultery,[1] in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934.[2] He was sentenced by a panel of officer and enlisted members to confinement for 30 months and reduction to the grade of E–5. The convening authority approved the findings and sentence as adjudged.

On appeal, the appellant alleges that the prosecution improperly failed to disclose, and the military judge erroneously withheld, relevant exculpatory medical information. The subsequent release of the information after the prosecution rested, he claims, was so

---

1. The adultery specification alleges that the appellant wrongfully engaged in sexual intercourse with a woman who was not his wife, but does not allege that either participant was married to a third person. Despite the omission of this element, the parties at trial treated the specification as an allegation of adultery, and so do we. Because of our disposition of the case, we need not address the issue of whether the specification was fatally defective.

2. The appellant was also charged with, but acquitted of, unrelated specifications alleging false official statements and sleeping on post, in violation of Articles 107 and 113, UCMJ, 10 U.S.C. §§ 907, 913.

untimely that he was deprived of a fair trial despite the efforts of the military judge to remedy the error.

Having considered the excellent briefs and oral presentations of both the government and defense,[3] we conclude that disclosure of the medical information was required by the Constitution. We further conclude that the government has not proven beyond a reasonable doubt that the initial error in withholding it was rendered harmless by the belated actions of the trial counsel and the military judge. We therefore set aside the findings and the sentence and return the record for a new trial.

*Background*

The appellant was assigned to Schriever Air Force Base (AFB), Colorado, a base situated near the city of Colorado Springs. In the fall of 2001, the appellant met DW, a civilian female resident of Colorado Springs, through a local dating service. The two had not met prior to the date of the offenses.

On 11 November 2001, DW and the appellant agreed to meet in person and to go out to dinner together. She went to his off-base apartment. After some discussion there, DW and the appellant stayed and watched television for a while. The appellant gave DW a cherry-flavored beverage, which she drank. Shortly thereafter, DW began to experience hot flashes and dizziness, and her mouth felt dry. DW then either passed out or went to sleep for several hours. She stayed at the appellant's apartment that night because she felt unsafe to drive. DW testified that at some point during the night she awoke to find the appellant engaging in sexual intercourse with her.

The following day, DW told a coworker about her visit to the appellant's apartment and the events that followed. Expressing concern that DW had been drugged, the coworker suggested she go to a local hospital. DW complied, eventually undergoing a physical examination and providing a urine sample for analysis. The physical exam found bruising and other indications "consis-

tent with" sexual assault. There was no sign of trauma to DW's posterior fourchette, an area often traumatized during non-consensual intercourse. Because the dry mouth, hot flashes, and drowsiness DW reported are consistent with certain classes of drugs sometimes associated with sexual assaults—so-called "date rape" drugs, like benzodiazepines—her urine sample was tested for such drugs. An initial screening test generated results suggesting the presence of an unidentified form of benzodiazepine. The test results were at too low a level, however, to be reported a "positive" result under existing laboratory standards.

*Procedural History*

The prosecution theory of the case was that the appellant gave DW some kind of drug that caused her to lose consciousness, and while she was drugged, raped her. The prosecution relied on the testimony of DW, her coworker, the nurse who examined DW the day after the alleged assault, and a toxicologist, who testified about "date rape" drugs and the significance of DW's urinalysis.

At some point prior to trial, the trial counsel secured copies of DW's civilian medical records. Those records soon became a source of contention between the prosecution and the defense. Both before and after the appellant's Article 32, UCMJ, 10 U.S.C. § 832, pretrial hearing, his counsel made routine discovery requests seeking evidence in the possession of the government that might "tend to ... [n]egate the guilt" of the appellant. The appellant's counsel further requested access to the medical records of "all potential witnesses," and in particular asked for DW's complete medical records. The trial counsel responded that "relevant portions" of the medical records would be provided to the defense.

Trial counsel eventually provided the defense with records specifically referring to DW's physical examination, urinalysis, and counseling sessions after the incident, but averred that DW had expressed a desire that her remaining records not be released. Hon-

**3.** We heard oral argument in this case in Crystal City, Virginia, on 3 November 2005, as part of this Court's Project Outreach Program.

oring DW's wishes, and concluding that the remaining records were not relevant and necessary to the appellant's defense, trial counsel refused to provide them.

The appellant's trial defense counsel made a timely motion to compel production of all of the records. They informed the military judge that the defense team needed to review DW's records for signs of medical conditions that "may have effects, or effected her [sic] in ways that are similar perhaps to ways that she may have felt" the evening of the alleged rape. Trial defense counsel also sought records pertaining to medications that might explain DW's symptoms or the urinalysis results.

In response to the motion, trial counsel submitted the withheld medical records to the military judge for an *in camera* review. The military judge determined that 24 pages—about 20 percent of the total—should be released to the defense.[4] He denied the motion to compel as to the remaining 80 percent of DW's medical records—a total of almost 100 additional pages.

The court-martial proceeded in an orderly fashion throughout the prosecution's case-in-chief. After the prosecution rested, however, the trial counsel—apparently believing that the military judge had ruled in favor of the defense on all of the medical records—provided the withheld pages to a defense expert consultant. These additional pages contained multiple references to conditions and medications not disclosed in the earlier release of DW's records.

Armed with the additional pages, the defense moved for a mistrial. The defense team argued that the previously-withheld pages showed DW suffered from several medical conditions that could explain her symptoms the night of the alleged rape: diabetes, thyroid disease, asthma, chronic fatigue syndrome, and hypersomnia that had previously caused her to drop off to sleep in the middle of routine daytime activities. Furthermore, DW's records showed that she was perimenopausal at the time of the alleged rape, which an expert witness testified could explain the hot flashes she described and could, coupled

with several skin conditions she suffered, also explain at least some of the findings of her physical exam. Further, the new records mentioned a number of DW's prescriptions not disclosed in the previous release of documents, including medicines containing drugs in the benzodiazepine family.

The military judge immediately recognized the critical nature of these records, apologizing to the defense team and telling the appellant he "should have had this information sooner." The appellant's counsel emphatically agreed, arguing that the tardy disclosure deprived their client of a fair trial. They asserted they would have conducted a more thorough investigation about the conditions and medications listed in DW's records had they seen them prior to trial. In addition, trial defense counsel argued, they would have structured their case strategy differently had they known the full extent of DW's medical problems. They contended they would have questioned both the nurse and the toxicologist about DW's conditions and medications documented in the new records, seeking to cast doubt on any inference that the physical findings and drug test meant she was raped. Finally, trial defense counsel argued the withheld pages contradicted several elements of DW's testimony. If they had the pages prior to DW's appearance in court, the appellant's counsel contended their cross-examination would have been more detailed and more effective.

Trial counsel argued that declaring a mistrial is a drastic remedy, sparingly used, and contended that there were less drastic means of curing any prejudice. The military judge agreed with trial counsel and denied the motion for mistrial.

Trial defense counsel next moved for a continuance in order to interview DW's physician. They asserted, without contradiction by the trial counsel, that the doctor had refused a pretrial request to be interviewed. They admitted that they had not sought assistance from the court to compel his cooperation, but argued they made a tactical decision not to pursue a subpoena because they

---

4. Only 2 of the 24 pages released by the military judge appear to predate the alleged rape. Those two pages consist of printouts reflecting routine blood and urine tests.

did not, based on the data disclosed to that point, believe doing so would be likely to yield useful information. The military judge denied the motion for a continuance.

The military judge instead suggested a number of options to alleviate the impact of the tardy disclosure. He offered to permit the defense to make a new opening statement and to recall DW for additional cross-examination. Rather than permitting the defense to recall the government's toxicology expert—which would have required a delay—the military judge offered the defense an opportunity to enter into what he characterized as a favorable stipulation of expected testimony. Trial defense counsel chose to avail themselves of some, but not all, of these options. They maintained throughout, however, that none of the "fixes" proposed by the military judge were enough to cure the tactical disadvantage to the defense.

### Discussion

■ The trial counsel and the military judge correctly recognized, albeit belatedly, that they erred in withholding the bulk of DW's medical records from the appellant prior to trial. Rule for Courts–Martial (R.C.M.) 701(a)(2)(B) provides that the trial counsel must, upon request, permit the defense to inspect "[a]ny results or reports of physical or mental examinations, . . . which are within the possession, custody, or control of military authorities, . . . which are material to the preparation of the defense." Considering the question of materiality de novo, we conclude that DW's medical records were clearly material to the preparation of the defense. *See United States v. Charles,* 40 M.J. 414, 417 (C.M.A.1994).

On appeal, the parties focused most of their attention on the military judge's decision to deny the appellant's motion for mistrial. Our examination of the record, however, convinces us that the issue here is more fundamental. The pages withheld by the

government and the military judge contained evidence that could undermine every part of the government's case.[5] This is precisely the sort of information the Due Process Clause of the Fifth Amendment requires prosecutors to disclose. U.S. Const. amend. V; *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

We are sympathetic to the difficulties experienced by trial counsel in dealing with sensitive medical information. DW's reluctance to permit the appellant's counsel access to her records undoubtedly played a significant part in the trial counsel's decision to withhold them. That reluctance, however, did not amount to a bar against their release. Trial counsel still must examine evidence in the possession, custody, or control of the military authorities, and disclose information favorable to the defense. *United States v. Briggs,* 48 M.J. 143, 144 (C.A.A.F.1998) (citing *United States v. Simmons,* 38 M.J. 376, 381 (C.M.A.1993)).[6]

While it is apparent trial counsel here made a conscientious effort to balance their discovery obligations against DW's privacy concerns, the presence or absence of good faith is not the issue. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. Trial counsel should not have withheld the records.

Faced with the trial counsel's decision, the appellant's counsel properly sought relief in the form of a motion to compel. Trial counsel followed the correct procedure by submitting the records to the military judge for an *in camera* review. *See Briggs,* 48 M.J. at 145. The mere fact that the trial counsel followed this procedure, however, is not enough to save the government from error by the military judge. *See generally United*

5. For example: the urinalysis results could be explained by the prescription drugs disclosed in the records; the physical examination findings and DW's symptoms could be explained by her many medical conditions; and to the extent the records contradicted DW's sworn testimony, they could be used to attack her credibility.

6. To the extent this Court's dicta in the *Briggs* case suggests that trial counsel should not inspect nonprivileged records for *Brady* material, it is in error. *See United States v. Briggs,* 46 M.J. 699 (A.F.Ct.Crim.App.1996), *aff'd,* 48 M.J. 143 (C.A.A.F.1998).

*States v. Abrams,* 50 M.J. 361, 364 (C.A.A.F. 1999). Whenever the government withholds evidence, it assumes the risk that—as here—the evidence will turn out to be material and favorable to the defense. *See United States v. Romano,* 46 M.J. 269, 272–73 (C.A.A.F. 1997).

Although it seems plain in retrospect that the pages were of critical importance, it is equally plain that matters were less clear-cut when the military judge conducted his *in camera* review. In part, this was because the trial defense counsel could not focus his attention on specific maladies or medications. We do not find the appellant's counsel deficient in this regard: as the military judge himself noted, they had "no idea what's in there, and they really can't, and they're relying on the trial judge to identify these things." In this instance, the military judge failed to appreciate the significance of key portions of the medical records; but the appellant did not cause that failure and cannot be held to account for it.

■ Whatever the reason for the military judge's mistake, we agree with his ultimate assessment that the appellant should have had the pages sooner. The decision to withhold the bulk of the records, initially made by the trial counsel and ratified by the military judge following his *in camera* review, improperly deprived the appellant of *Brady*

material. Trial defense counsel articulated several plausible ways in which their strategy would have been different had they been timely given the withheld pages, and we find it likely that they would have prepared and presented their case quite differently. Indeed, we cannot discount the possibility that they might have succeeded in persuading the convening authority to dispose of the case in some forum short of a general court-martial.[7] *See, e.g., United States v. Eshalomi,* 23 M.J. 12, 28 (C.M.A.1986). Considering the record as a whole, and despite the military judge's efforts to fashion a cure for the error, we are not convinced that the error was harmless beyond a reasonable doubt. *See United States v. Garlick,* 61 M.J. 346, 351 (C.A.A.F. 2005). Accordingly, we cannot affirm the appellant's conviction.

### Conclusion

The findings and sentence are set aside. The record of trial is returned to The Judge Advocate General for remand to the convening authority. A rehearing may be ordered.

---

7. The Article 32, UCMJ, Investigating Officer recommended that the rape specification not be referred to trial, citing weakness in the government's evidence. While not binding, his recommendation might well have carried more weight had the defense been able to present the data withheld by the trial counsel.