# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

No. ACM 38859

————————————

## UNITED STATES
*Appellee*

v.

## Eldridge S. JONES, Jr.
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 January 2017

————————————

*Military Judges:* Christopher F. Leavey (arraignment); Donald R. Eller, Jr.

*Approved sentence:* Bad-conduct discharge and reduction to E-3. Sentence adjudged 28 February 2015 by GCM convened at Aviano Air Base, Italy.

*For Appellant:* Major Virginia M. Bare, USAF; and Major Isaac C. Kennen, USAF.

*For Appellee:* Major Jeremy D. Gehman, USAF; Major Mary Ellen Payne, USAF; and Mr. Gerald R. Bruce, Esquire.

Before MAYBERRY, SPERANZA, and JOHNSON, *Appellate Military Judges.*

Senior Judge MAYBERRY delivered the opinion of the Court, in which Judges SPERANZA and JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MAYBERRY, Senior Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of communicating a threat to Airman First Class (A1C) SM, in violation of Article 134, UCMJ, 10 U.S.C. § 934. Appellant was acquitted of raping A1C SM and a second specification of communicating a threat to his ex-wife. The adjudged and approved sentence consisted of a bad-conduct discharge and reduction to the grade of E-3.

Appellant alleges four assignments of error: (1) the finding is ambiguous thereby preventing appellate review; (2) the finding is legally and factually insufficient; (3) the military judge abused his discretion in failing to review the mental health records of A1C SM; and (4) the sentence is inappropriately severe. Finding no relief is warranted, we affirm the findings and sentence as approved by the convening authority.

## I. BACKGROUND

Appellant met A1C SM when she arrived at Aviano Air Base in February of 2012. Very shortly after they met, the two began an affair[1] and were sexually active. For all intents and purposes, A1C SM lived with Appellant during the first few months of her tour. In April of 2012, A1C SM went home on emergency leave to care for her terminally ill father. While A1C SM was on leave, Appellant texted her, in explicit detail, about participating in his sexual fantasy. The two continued to exchange graphic sexual texts and emails throughout their relationship.[2] A1C SM characterized their text messages as very different from their face-to-face conversations.

The general nature of Appellant's fantasy involved an "open relationship" with A1C SM, in which she conveyed the details of her other sexual encounters to him and he desired to have sex with her after she had been with someone else. A1C SM testified that she was not comfortable with this lifestyle, but did not want to lose Appellant. At some point, A1C SM provided details of an alleged sexual encounter to Appellant.[3] Appellant was angered, either because of the encounter itself or because he felt A1C SM did not provide sufficient details of the event.

---

[1] A1C SM was married, but her husband did not accompany her to Italy.

[2] Prosecution Exhibits contained print-outs of messages and texts sent over three different platforms that totaled in excess of 700 pages.

[3] A1C SM testified that she did not engage in sexual intercourse with the other individual, but she told Appellant that she did.

In early June of 2012, after one of many arguments involving sex, A1C SM fell asleep in Appellant's bed while Appellant was downstairs watching movies. Sometime later that night, A1C SM alleges Appellant got in the bed and made sexual advances that she refused. A1C SM alleges that Appellant then rolled her onto her back, grabbed her wrists, pulled off her shorts, and penetrated her. She further alleges that Appellant put his hands around her neck and told her that if she ever slept with anyone else or did anything wrong, he would kill her and ruin her career. Although A1C SM informed two friends about this incident over the next year, she did not officially report it.

Nearly two years after this alleged sexual assault, A1C SM participated in a YouTube video entitled Project Unbreakable. As part of her participation in this video, A1C SM held up a poster containing a brief description of her alleged sexual assault by Appellant, her age, and then followed up on the video stating the positive change she wanted from the experience. At some point after making her video, A1C SM showed it to her supervisor, TSgt MM. A few weeks later, A1C SM told TSgt MM that she was uncomfortable with Appellant working in the same office space as her, called Appellant a horrible person, and later informed him that the video was about Appellant. When TSgt MM told his supervisor of his plan to move Appellant out of the duty section and the reason why, the information was shared with the First Sergeant and, shortly thereafter, the allegation was reported to the Sexual Assault Response Coordinator and the Air Force Office of Special Investigations (AFOSI).

## II. DISCUSSION

### A. Ambiguous Finding

Appellant argues that the members' findings are unclear because the members used the findings worksheet to except the word "kill," and the word "kill" appears twice in the Specification of Charge II, so it is impossible to know the members' intent. Appellant relies on the following to advance his argument: the original Court-Martial Order (CMO) removed both uses of the word "kill"; two witnesses testified that A1C SM informed them of the event, but she did not include the word "kill" in her description—both testified that she said Appellant threatened to "ruin her life and her career"; and the findings worksheet said "words" with regard to possible findings by exception to support the assertion that the findings are ambiguous.[4] We disagree.

---

[4] The Court-Martial Order was later corrected to except the first use of the word "kill" in the Specification. The findings worksheet offered multiple options concerning

*(Footnote continues on next page)*

In relevant part, the specification reads:

> wrongfully communicate . . . a threat to kill . . . by stating, "If you ever sleep with anyone else, or if you do anything wrong to me, I will kill you and ruin your career" or words to that effect, and that such conduct was to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

During trial, the military judge and trial and defense counsel discussed the findings worksheet and exceptions and substitutions. Trial counsel requested that the word "kill" be listed as an exception on the worksheet for the Specification of Charge II. The discussion centered on excepting Appellant's "intent to kill vice injure the person or reputation" of the victim. The military judge stated:

> [Regarding] Charge II and its Specification, I brought up the issue of whether, based on the government's charging instrument, the threat was a clear and present determination or intent to kill vice injure the person or reputation of [the victim], although the specific language that is charged would tend to indicate that. I think the government's position is at this stage that they would ask for members to be provided with the option to except that particular language from the specification, to kill [the victim] and simply have a wrongfully communicate to [the victim] a threat by stating and then the words to that effect. Is that the government's position?

This discussion made it clear that it was not the language of the threat, but rather the nature of the threat—Appellant's intent to kill—that could be excepted from the specification. Although trial defense counsel was originally confused, he realized his misunderstanding and had no objection to this exception on the findings worksheet or the judge's instruction.

The military judge instructed the members regarding the Specification of Charge II, communicating a threat:

> [The elements of the offense are:] One, that at or near Aviano, Italy, on or about 2 June 2012, the accused communicated certain language, to wit: "If you ever sleep with anyone else, or if

---

excepted language on this Specification because the charge included both terminal elements of service discrediting and prejudicial to good order and discipline. The members were instructed that they could except one or the other. This additional possibility explains the use of "words" in the worksheet.

you do anything wrong to me, I will kill you and ruin your career," or words to that effect;

. . .

Three, that the language used by the accused under the circumstances amounted to a threat, that is, a clear, present determination or intent to injure the person and reputation of [the victim] presently or in the future;

. . .

Additionally and as to Charge II, if you have doubt about whether the words alleged to have been communicated *reflected a clear, present determination to kill* [the victim], but you are satisfied beyond a reasonable doubt that the language *reflected a clear, present determination to injure the person and reputation* of [the victim] presently or in the future, you may make minor modifications in reaching your findings by excepting the particular language which has not been proven as long as all of the other elements have been proven beyond a reasonable doubt.

(Emphasis added).

Whether a verdict is ambiguous and thus precludes us from performing a factual sufficiency review is a question of law we review de novo. *United States v. Ross*, 68 M.J. 415, 417 (C.A.A.F. 2009) (citing *United States v. Rodriguez*, 66 M.J. 201, 203 (C.A.A.F. 2008)). "Absent evidence to the contrary, this Court may presume that members follow a military judge's instructions." *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000). Typically, ambiguous situations arise when the charge includes divers occasions and the findings except that language but do not clearly articulate which occasion was the basis for the conviction. *See United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003).

While it is unfortunate that the original CMO was erroneous, the members were clearly informed that they could find Appellant guilty of communicating a threat without having an intent to kill at the time the threat was made, and this is what the members found. The instruction and the findings worksheet openly addressed excepting the word "kill" from Appellant's intent, not from the alleged words of the alleged threat. Accordingly, the finding is not ambiguous and Appellant is entitled to no relief.

## B. Legal and Factual Sufficiency

Appellant argues that the finding of guilt as to the communication of a threat to A1C SM was neither legally nor factually sufficient.

5

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Appellant contends that the charged language, although threatening on its face, was not wrongful as it relates to the subjective requirement of wrongfulness because these discussions were part of their sex life. Additionally, Appellant asserts that the threat did not affect good order and discipline because no evidence was offered to support such a claim, and the evidence that the threat would be service-discrediting was linked in time to the sexual assault allegation of which Appellant was acquitted. We disagree.

While certain aspects of Appellant's and A1C SM's sex life can be characterized as unconventional, the facts do not negate the wrongfulness of Appellant's communication. The military judge correctly instructed the members that under the law, "wrongful" means without legal justification or excuse. A review of the entire record of trial does not provide any basis for this court to conclude Appellant's language was "mere jest or idle banter." *See United States v. Gilluly*, 32 C.M.R. 458 (C.M.A. 1963). We do not find any suggestion from the record that Appellant's words were made for an innocent or legitimate purpose. *Manual for Courts-Martial*, pt. IV, ¶ 110c. (2012 ed.). Nor was it a simple lovers' quarrel. *See United States v. Hill*, 48 C.M.R. 6, 8 (C.M.A.

6

1973). Nothing about the facts and circumstances surrounding the offense contradicted Appellant's express intent.

Appellant's communicating a threat charge included both terminal elements: prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces. The military judge correctly instructed the members that "conduct prejudicial to good order and discipline is conduct which causes a reasonably direct and obvious injury to good order and discipline" and "service discrediting conduct is conduct which tends to harm the reputation of the service or lower it in public esteem." The members, though given an option to find by exceptions, found Appellant guilty of communicating a threat that was both prejudicial to good order and discipline and service discrediting. The focus of service discrediting conduct is on the "'nature' of the conduct, whether the accused's conduct would tend to bring discredit on the armed forces if known by the public, not whether it was in fact so known." *United States v. Phillips*, 70 M.J. 161, 165–66 (C.A.A.F. 2011).

Appellant, a noncommissioned officer, was engaged in an adulterous relationship with a junior member of his unit who was married. While his hands were around her neck, he threatened her, saying he would kill her and ruin her career. When Appellant began working in the same office, A1C SM was uncomfortable, and Appellant had to be removed from their duty section. These facts provide ample evidence that Appellant's threat had a reasonably direct and palpable impact on good order and discipline and were service discrediting. A rational factfinder could have found Appellant's conduct to be prejudicial to good order and discipline and service discrediting, and so do we.

## C. Failure by Military Judge to Review Mental Health Records[5]

Appellant next asserts the military judge erred by denying the trial defense counsel's request to conduct an in camera review of A1C SM's mental health records. The information trial defense counsel provided to the military judge to support their request for an in camera review was an email containing the contents of an instant message conversation between Appellant and A1C SM on 28 April 2014, which indicated that A1C SM sought counseling for two years as a result of the offenses contained in Charges I and II, and an email from trial counsel that stated the mental health office confirmed that records existed for A1C SM. During the closed hearing pursuant to Mil. R. Evid. 513, A1C SM testified that the instant message conversation was done

---

[5] To avoid unnecessarily disclosing the content of privileged mental health records, this court confines our description of these records to "grief counseling," which is a description similarly found in the unsealed transcript.

at the behest of AFOSI as part of a pretext conversation; they specifically suggested she say she sought counseling with regard to the actions of Appellant when in reality, she only went to mental health for grief counseling after her father passed away in early June 2012.

After A1C SM testified, trial defense counsel argued that an in camera review was necessary to determine if A1C SM was being truthful regarding her counseling history, specifically acknowledging that if the records only addressed grief counseling, the defense had absolutely no entitlement to anything that would be within those records.

The military judge concluded that Appellant failed to articulate a specific factual basis demonstrating a reasonable likelihood that the requested records would yield information admissible under an exception to Mil. R. Evid. 513.

We review a trial judge's conclusion that Appellant failed to provide a sufficient basis for an in camera review for an abuse of discretion. *See United States v. Wuterich*, 67 M.J. 63, 65 (C.A.A.F. 2008); *United States v. Lyson*, ACM 38067, unpub. op. at 14 (A.F. Ct. Crim. App. 16 September 2013).

Rule for Courts-Martial (R.C.M.) 701 addresses discovery in courts-martial. R.C.M. 701(a)(2)(B) requires that the defense be permitted to inspect the "results or reports of physical or mental examinations . . . which are within the possession, custody, or control of military authorities, . . . and which are material to the preparation of the defense." R.C.M. 701(f) adds, however, "Nothing in this rule shall be construed to require the disclosure of information protected from disclosure by the Military Rules of Evidence."

R.C.M. 703 governs the production of witnesses and evidence. This rule entitles both parties to the production of evidence which is relevant and necessary. R.C.M. 703(f)(1). Despite this, neither party is entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process. R.C.M. 703(f)(2).

"Normally, in camera review is an appropriate mechanism to resolve competing claims of privilege and right to review information." *United States v. Wright*, 75 M.J. 501, 510 (A.F. Ct. Crim. App. 2015); *United States v. Bowser*, 73 M.J. 889, 897 (A.F. Ct. Crim. App. 2014), *aff'd,* 74 M.J. 326 (C.A.A.F. 2015) (mem.). However, in camera review is not automatically appropriate every time one party seeks information over which another claims privilege. *Id.*

Military Rule of Evidence (Mil. R. Evid.) 513 addresses the disclosure of psychotherapist-patient records. Generally, this privilege provides the following:

> [a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the Uniform Code of Military Justice, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

Mil. R. Evid. 513(a).

This privilege, however, is not absolute. *See Bowser*, 73 M.J. at 898–900. A prosecutor may not suppress evidence favorable to an accused upon request, as this violates notions of due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). When a witness's reliability may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule. *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Therefore, the Government violates an accused's due process rights if it withholds evidence that is "exculpatory, substantive evidence, or evidence capable of impeaching the government's case," and "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Behenna*, 71 M.J. 228, 238 (C.A.A.F. 2012) (internal quotation marks omitted).

The pertinent portions of Mil. R. Evid. 513 in effect at the time of Appellant's court-martial stated:

> (e) *Procedure to determine admissibility of patient records or communications*.
>
> (1) In any case in which the production or admissibility of records or communications of a patient other than the accused is a matter in dispute, a party may seek an interlocutory ruling by the military judge.
>
> . . .
>
> (3) The military judge may examine the evidence or a proffer thereof *in camera*, if such examination is necessary to rule on the motion.

Mil. R. Evid. 513(e) as modified by Executive Order 13,643.[6]

In *Wright*, we examined the requirements for ordering in camera review of potentially privileged material. 75 M.J. at 510. In doing so, we cited with approval and followed *United States v. Klemick*, 65 M.J. 576, 580 (N-M. Ct. Crim. App. 2006), where a sister service court established a three-prong test for this question of in camera review:[7]

> (1) did the moving party set forth a specific factual basis demonstrating a reasonable likelihood that the requested privileged records would yield evidence admissible under an exception to Mil. R. Evid. 513;

> (2) is the information sought merely cumulative of other information available; and

> (3) did the moving party make reasonable efforts to obtain the same or substantially similar information through non-privileged sources?

In the present case, we agree with the military judge's determination that the trial defense counsel did not demonstrate a sufficient factual basis to trigger an *in camera* review. A1C SM testified that her statement concerning seeking counseling because of the actions by Appellant was not true. Consequently, the defense had no basis to demonstrate that her privileged records contained relevant information. Additionally, trial defense counsel expressly acknowledged that they were not requesting and had no right to any grief counseling records. That is all the privileged records contained.

---

[6] On 15 May 2013, through Executive Order 13,643, Mil. R. Evid. 513(e)(3) was amended to further expand the military judge's authority and discretion to conduct *in camera* reviews. *See* Exec. Order No. 13,643, 78 Fed. Reg. 29,559, 29,592–93 (15 May 2013). The previous language of Mil. R. Evid. 513(e)(3) that "the military judge *shall* examine the evidence or a proffer thereof *in camera,* if such examination is necessary to rule on the motion" was changed to "the military judge *may* examine the evidence or a proffer thereof *in camera,* if such evidence is necessary to rule on the motion." *Id.* (Emphasis added).

[7] We note that on 17 June 2015, pursuant to Executive Order 13696, Mil R. Evid. 513(e)(3) was again amended to incorporate the threshold test for the military judge to conduct an *in camera* review of mental health records consistent with *United States v. Klemick*, 65 M.J. 576, 580 (N-M. Ct. Crim. App. 2006) and the requirement that the requested information meet one of the enumerated exceptions under subsection (d) of the Rule. Exec. Order No. 13,696, 80 Fed. Reg. 119, 35,819–20. (22 Jun. 2015).

Although we find that the military judge correctly denied the motion to compel the records, we have reviewed the non-disclosure pursuant to the standards in *United States v. Roberts*, 59 M.J. 323 (C.A.A.F. 2004). Despite trial defense counsel's explicit waiver of any request for grief counseling records, Appellant now claims that the records were requested, were "material to the presentation of the defense," and were therefore discoverable to impeach A1C SM.[8] Based on the explicit statement by trial defense counsel that they were not seeking grief counseling records, we find that there is no reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different. Assuming, arguendo, that there was a request for these records, we find the nondisclosure harmless beyond a reasonable doubt. Appellant was acquitted of raping A1C SM but convicted of communicating a threat to her. While it is true that A1C SM's credibility was critical to the Government's case, she was not the only witness who provided evidence on this offense. A1C SM told two other people of the threat, at two different times prior to the AFOSI investigation, one within days of when it happened. The members personally observed all of the witnesses testify, assessed their credibility, and found Appellant guilty. We are confident that Appellant received a fair trial.

## D. Sentence Appropriateness

Appellant alleges that a bad-conduct discharge is inappropriately severe for the offense of which he was convicted. We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006); *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering [Appellant], the nature and seriousness of the offenses, [Appellant's] record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007) (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)).

While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United*

---

[8] Appellant relies on Rule for Courts-Martial (R.C.M.) 701 and *United States v. Stewart*, 62 M.J. 668 (A.F. Ct. Crim. App. 2006). *Stewart* is inapplicable as it dealt with *nonprivileged* records, and R.C.M. 701(f) does not require disclosure of materials protected under Military Rule of Evidence 513.

*States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). The maximum imposable sentence in this case was a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to E-1. The approved sentence of a bad-conduct discharge and reduction to E-3 was clearly within the discretion of the convening authority.

Appellant argues that the punitive discharge is "too harsh based on the evidence" and that the members reached the sentence based on a misunderstanding of the law. The basis of Appellant's position is that four court members provided clemency letters asserting that a bad-conduct discharge was the only discharge mechanism available to them. We disagree with Appellant's assessment that the members misunderstood the law. The court members received sentencing instructions regarding punitive discharges. The clemency submissions offered here were not contemporaneous with announcement of the sentence and were prepared by defense counsel, with the language of each letter being nearly identical. The court members understood the law, made a collective decision as to an appropriate sentence, and nothing in their clemency letters impeaches the sentence they imposed.

We have given individualized consideration to this Appellant, his conduct, his military career and accomplishments, and the other relevant matters within the record of trial. We conclude that the approved sentence is not inappropriately severe.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

12